UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARISSA V.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00470-SEB-DLP |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[2] | ) ) |
| | ) |
| Defendant. | ) |

# ORDER OVERRULING PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ADOPTING THE RECOMMENDATION AND AFFIRMING THE FINAL DECISION OF THE COMMISSIONER

Plaintiff Larissa V. ("Larissa") appeals the final decision of the Commissioner of the Social Security Administration ("SSA") denying her March 23, 2016, application for disability insurance benefits ("DIB"). R. (Dkt. 13) at 10. The application was initially denied on July 18, 2016, R. at 98, and upon reconsideration on November 4, 2016, R. at 106. The administrative law judge ("ALJ") conducted a hearing on November 8, 2018, R. at 32–65, resulting in a decision on February 12, 2019, that Larissa was not disabled

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

and thus not entitled to receive DIB, R. at 7–23. The Appeals Council denied review on December 13, 2019, and the Commissioner's decision became final. R. at 1. On February 11, 2020, Larissa timely filed this civil action seeking judicial review of that the decision pursuant to 42 U.S.C. § 405(g). Dkt. 1. The Court referred this matter to Magistrate Judge Pryor, Dkt. 15, who, following the completion of briefing, submitted her Report and Recommendation on April 19, 2021, recommending that the decision of the Commissioner be affirmed, Dkt. 26. The cause is now before the Court on the Plaintiff's timely filed Objection to the Magistrate Judge's Report and Recommendation. Dkt. 27; 28 U.S.C § 636(b)(1)(B).

For the reasons outlined below, we overrule the objection to the Report and Recommendation and affirm the Commissioner's decision.

## **Background**[3]

Larissa was 35 years of age when her alleged disability began. *See* R. at 177.

The ALJ followed the five-step sequential evaluation set forth by the SSA, *see* 20 C.F.R. § 404.1520(a)(4)(i) to (v), in concluding that Larissa was not disabled. R. at 23. Specifically, the ALJ found as follows:

- At Step One, Larissa had not engaged in substantial gainful activity[4] since June 1, 2015, the alleged onset date. R. at 12.

---

[3] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 405.1572(a).

2

- At Step Two, she had "the following severe impairments: fibromyalgia, cervical and lumbar degenerative disc disease, postural orthostatic tachycardia syndrome, hypertension, idiopathic hypersomnia/narcolepsy, Raynaud's syndrome, obesity, depression, and anxiety." R. at 12 (citation omitted).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. at 12.

- After Step Three but before Step Four, Larissa had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) except: [t]he claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, but can never kneel, crouch, or crawl. She can occasionally overhead reach with [her] bilateral upper extremities. She must never be exposed to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards such as unprotected heights or dangerous moving machinery. She can stand for 30-45 minutes at a time for a total of up to 2 hours in the 8-hour workday and walk for 30-45 minutes at a time for a total of up to 2 hours in the 8-hour workday. She can understand, remember, and carry out short, simple, and routine instructions. She can sustain attention and/or concentration for 2[-]hour periods at a time in an 8-hour workday on short, simple, routine tasks. She cannot do fast-paced production work such as assembly line work." R. at 16.

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Larissa's RFC, she was incapable of returning to any of her past relevant work as an office manager, store laborer, and cashier. R. at 22.

- At Step Five, relying on the VE's testimony and considering Larissa's age, education, work experience, and RFC, she was capable of making an adjustment to other work with jobs that existed in significant numbers in the national economy in representative occupations such as an addressing clerk, document preparer, and table worker. R. at 23–24.

## **Standard of Review**

"A district court may assign dispositive motions to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition, including any proposed findings of fact." *Schur v. L.A. Weight Loss Ctrs., Inc.,* 577 F.3d 752, 760 (7th Cir. 2009) (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P.

72(b)).  "The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to adopt, reject, or modify it." *Schur*, 577 F.3d at 760 (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)).  After a Magistrate Judge makes a Report and Recommendation, either party may object within fourteen days.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made" with respect to dispositive motions.  28 U.S.C. § 636(b)(1).  Further, a judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

> Upon review of the Commissioner's decision,
>
> [w]e will uphold [it] if it applies the correct legal standard and is supported by substantial evidence. *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).  Our review is limited to the reasons articulated by the ALJ in her decision. *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).

*Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).  In determining whether the decision was properly supported, we neither reweigh the evidence nor assess the credibility of witness, nor substitute our judgment for the Commissioner's. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Larissa raised two errors on appeal, contending that the ALJ: (1) provided only a perfunctory evaluation of Listing 4.05, and (2) failed to support her standing and walking

finding. Dkt. 20 at 1. The Magistrate Judge recommended that the Commissioner's final decision be affirmed, concluding that: (1) Larissa did not meet her burden to establish that Listing 4.05 was satisfied; the ALJ's decision, read as a whole, discussed the relevant evidence adequately and was bolstered by the consultants' reviews, Dkt. 26 at 26–32, and (2) the ALJ provided an adequate explanation of her RFC finding, except she did not weigh the medical opinion of a consultative examiner; however, the ALJ's omission was either immaterial or harmless error, *id*. at 32–37. Larissa objects to each of the Magistrate Judge's material conclusions. Dkt. 27.

After careful review, we overrule the objections. The Magistrate Judge's conclusions reflect the facts and the law applicable to Larissa's case correctly. As such, we adopt the Magistrate Judge's Report and Recommendation.

## Analysis

### Listing 4.05

Concerning the ALJ's evaluation of Listing 4.05, in Larissa's initial brief, she contended that the ALJ's discussion of the listing was conclusory, the listing was supported by a positive tilt table test and the results of Holter monitoring, and the ALJ discussed the tilt table test, but not the Holter monitoring. Dkt. 20 at 15–17. Larissa asserted that the Holter monitoring "report indicated instances of syncope, near-syncope, near-collapse, and four instances of feeling light-headed and dizzy upon waking up or standing up." *Id*. at 16.

The Magistrate Judge provided a thorough discussion of the relevant facts and legal authority with a careful analysis of whether the evidence met or equaled the listing.

We adopt the Magistrate Judge's authority, analysis, and conclusions. However, we reiterate one critical conclusion concerning the lack of episodes meeting or equaling the severity of the listing.

Listing 4.05 for recurrent arrhythmias requires "recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography . . . coincident with the occurrence of syncope or near syncope." 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 4.05 (citations omitted). Larissa testified that she has not actually passed out or fainted since she was getting out of the bathtub in 2000 or 2001, except that tilt table testing in 2015 reproduced a syncopal episode in a laboratory setting. R. at 45. She further testified that she learned how to manage her episodes of dizziness caused by her postural orthostatic tachycardia syndrome ("POTS"). R. at 46–47. She had not experienced any further syncopes by following her physician's advice after a positive tilt table test in 1995, to sit down and put her head in-between her knees when she feels like fainting from standing still, combined with her own experience that walking or moving around also helps when she first stands up. *Id.*

However, Larissa contends that the record demonstrated recurrent episodes of near syncope. The regulations explain that the SSA "consider[s] *near syncope* to be a period of altered consciousness, since syncope is a loss of consciousness or a faint. It is not merely a feeling of light-headedness, momentary weakness, or dizziness." 20 C.F.R. § Pt. 404, Subpt. P., App. 1, 4.00(F)(3)(b) (emphasis in original). As the Magistrate Judge explained, there is no evidence of "near syncope (*i.e.*, a period of altered consciousness)

6

events." Dkt. 26 at 28. Contrary to Larissa's assertion above, the Holter monitoring did not indicate near syncope. The report identifies that the testing was performed because of "[i]ndications" of "[s]yncope and [c]ollapse and [n]ear syncope." R. at 415. However, the results of the testing, on September 22, 2015, were that Larissa reported four "occasions during waking up or standing up" of "lightheaded[ness] and dizz[iness]" without corresponding, significant electro-abnormalities recorded during those episodes. *Id*. Those symptoms are explicitly less severe that the listing requires.

We agree with Larissa that part of the Magistrate Judge's analysis concerning the precise cause of Larissa's symptoms—whether they are cardiac in nature as the listing requires to be met—is less relevant to whether the listing was medically equaled. *See* Dkt. 27 at 2; *see also* 20 C.F.R. § 404.1526(b)(2)–(3) (listings can be equaled by analogous impairments or a combination of impairments). However, medical equivalence requires that a claimant's condition be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). There is little to no evidence that Larissa experienced altered consciousness during the period at issue. Her testimony that she can control the events by taking certain exertional positions undermines her contention on appeal that her episodes are equivalent in severity to altered consciousness. The Magistrate Judge also explained that the medical record showed that Larissa was able to control her episodes with the use of a chair when standing from a sitting position. Dkt. 26 at 27. On examination, her treating neurologist, Ryan M. Gleason, M.D., observed that Larissa "does become somewhat lightheaded and dizzy when she stands for about 25 seconds. When she props herself up on the side of an

exam chair with minimal change in leg position, she has entire cessation of [the] sensation." R. at 618. Functionally, Larissa's reported symptoms do not equal the severity of Listing 4.05.

In the written decision, the ALJ expressly considered whether Larissa's POTS satisfied Listing 4.05, even though her analysis in the section dedicated to her Step Three findings was conclusory. *See* R. at 14. However, the Seventh Circuit has explained "it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). The ALJ discussed the record concerning Larissa's complaints to Dr. Gleason:

> The claimant reports she now has difficulty standing for prolonged periods of time, her heart rate goes up and she [starts] sweating. She stated that it takes her three to four hours to get ready in the morning for this reason. Dr. Tiritilli[5] noted it is unclear as to why she is unable to get ready sitting down.

R. at 19 (citing R. at 476). The ALJ also discussed the findings of the positive tilt table test on October 28, 2015, that caused Larissa's heart rate to rise, then abruptly drop, and resulted in her losing consciousness. *Id.* Dr. Gleason reviewed the results of the tilt table testing and explained they were "positive for vasovagal response." R. at 476. Still, Dr. Gleason's observation that it was unclear what would prevent Larissa from sitting down to do something like "her hair" is relevant to analyses of the severity of her condition

---

[5] The ALJ, or more likely the SSA's decision writer, wrongly attributed this treatment evidence to Larissa's primary care physician, Mark E. Tiritilli, M.D., whose name appears in these treatment records because he referred Larissa to Dr. Gleason and received a copy of Dr. Gleason's report. *See* R. at 476–78.

both at Step Three for presumptive disability that would preclude all work and in the context of the ALJ's RFC finding that she could perform sedentary exertional work limited to only 30 to 45 minutes of standing or walking at one time. *See id.* (Larissa reported that standing to do her hair caused her to sweat and her heart to pound); *see also supra* in the next section.

  Moreover, the ALJ explained that her Step Three finding was consistent with the reviewing consultants' opinions, whose assessments were entitled to considerable deference when supported by the record, no acceptable medical source had given an opinion that Larissa's impairments equaled a listing, and she had not met her burden of presenting medical evidence that supported such a finding. R. at 12–13. In the absence of a contradictory medical opinion, the ALJ can rely on a reviewing consultant's opinion that no listing was met or equaled even without articulating such reliance in the decision; the completion of disability transmittal forms and an RFC assessment by a state agency consultant allows the presumption that the existing record did not demonstrate that a listing was met or equaled. *Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). The consultants specifically considered Larissa's POTS diagnosis. R. at 73; 89. They found Larissa's severe impairments to include "other disorders" of the nervous system. R. at 74; 89. On July 18, 2016, J. Sands, M.D. assessed an RFC as part of his review. R. at 75–77. Dr. Sands noted that Larissa "alleges orthostasis, [but there was] no change in [blood pressure] with lying, sitting, standing [during the consultative examination.]" R. at 76. Upon reconsideration review, on November 3, 2016, Joshua Eskonen, D.O., also assessed

an RFC and repeated the same notation concerning the consultative examination.  R. at 91–92.  As the Magistrate Judge explained, the record at the time of Dr. Sands's review included the relevant objective evidence—the 2015 tilt table test report and the 2015 Holter monitor report—that Larissa contends established that she met or equaled the listing.  Dkt. 26 at 30–31 (citing R. at 71–72).  Accordingly, we presume that the consultants considered and rejected that the listing was met or equaled.

In her initial brief, Larissa quoted the Seventh Circuit in *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) that "the ***ALJ may rely solely on opinions given in Disability Determination and Transmittal forms*** and provide little additional explanation ***only so long as there is no contradictory evidence*** in the record." Dkt. 20 at 14–15 (emphasis added by Larissa).  However, in *Ribaudo*, the ALJ's analysis was considerably more perfunctory than here; the ALJ had not mentioned the relevant listing, nor discussed any of the evidence most favorable to the claimant that aligned with the listing requirements.  458 F.3d at 583.  Here, the ALJ at least mentioned the relevant listing.  More importantly, she considered the relevant impairment thoroughly, including a discussion of Larissa's specific complaints, Dr. Gleason's conclusions, and the most supportive diagnostic testing, *i.e.*, the tilt table test.  Because Larissa has not presented evidence that demonstrates that the listing was met or equaled, remand is not necessary for a more thorough analysis specifically at Step Three.

### **RFC finding**

Larissa also challenges the ALJ's RFC finding that she could stand and walk for 30-45 minutes at a time for a total of two hours in an eight-hour workday.  Again, we

incorporate the Magistrate Judge's legal authority and adopt her conclusions and analysis. The Magistrate Judge focused her analysis on aspects of a consultative examiner, Roland Wilson, M.D.'s report that Larissa has identified as medical opinions. *See* Dkt. 26 at 32–33. The Magistrate Judge applied the regulation applicable to Larissa's claim based on her filing date, which explains that medical opinions are "judgments about the nature and severity" of a claimant's impairments that the ALJ is obligated to address. *Id*. at 33 (citing 20 C.F.R. § 404.1527(a)–(b) ("for claims filed before March 27, 2017"). The Magistrate Judge concluded that one statement in the "History of Present Complaint" section of the report was merely a reflection of Larissa's subjective statements about her limitations, rather than a medical judgment made by Dr. Wilson that would require the ALJ's specific attention. Dkt. at 33–34. The Magistrate Judge concluded that another statement in the examination findings section was a medical opinion, but the ALJ's failure to address it was either immaterial or harmless error based on the ALJ's related analysis of the record.[6] *Id*. at 34–37.

On July 11, 2016, Dr. Wilson examined Larissa at the request of the Disability Determination Bureau. R. at 745–46. Dr. Wilson completed a report that included a "History of Present Complaint" section with statements appearing in a subsection titled "Review of Systems" that were noted to have been reviewed with Larissa. R. at 746. In bold, the report recorded that Larissa "states that she has postural orthostatic tachycardia,

---

[6] We adopt the Magistrate Judge's analysis of the related evidence addressed by the ALJ concerning Larissa's gait. *See* Dkt. 26 at 35–36. To focus on Larissa's specific objections, *see* Dkt. 27 at 5–6, we decline to elaborate further here, but agree that substantial evidence supported the ALJ's relevant RFC findings, s*ee* Dkt. 26 at 37.

dizzy spells, and tires easily due to aches in the legs. She complains of pain in her lower back, legs, and shoulders. She cannot sit or stand for more than 15 min[utes] and walk no more than 5 min[utes]." *Id.* We agree with the Magistrate Judge that this section of the form merely records Larissa's subjective complaints and is not a medical opinion.

Larissa contends that this "exact argument" was rejected by the Seventh Circuit in the unpublished opinion, *Huber v. Berryhill*, 732 F. App'x 451 (7th Cir. 2018). Dkt. 27 at 5. We disagree. In *Huber*, the court explained:

> The Commissioner argues that the consultative examiner's statement about Huber's abilities to stand and walk was not a medical judgment, and therefore the ALJ did not need to consider it. Because the examiner recorded this statement as one of Huber's complaints, the Commissioner contends that this statement "reasonably reflected Huber's own report of difficulties," not a medical opinion that the ALJ was required to evaluate. We reject this argument because the examiner repeated this statement in his report immediately under the heading, "Medical Source Statement," signaling that this statement was the examiner's opinion too.

732 F. App'x at 455 (citing Social Security Ruling 96-5p (S.S.A. July 2, 1996), 1996 WL 374183, at *4 ("Medical source statements are medical opinions submitted by acceptable medical sources.")). Here, Dr. Wilson did not repeat the statement later in the report. His "Medical Source Statement" was limited to only a list of the diagnoses that he found supported by the examination, chronic fatigue syndrome and morbid obesity. R. at 749. Thus, there is not the ambiguity in *Huber* as to whether Dr. Wilson had concluded that Larissa's subjective reports—that she could only stand for 15 minutes and walk for five minutes at a time—were substantiated by the findings of the examination.

Larissa also asks this Court to reject the application of harmless error to the ALJ's failure to weigh another statement in Dr. Wilson's report. Dkt. 27 at 5–6. Dr. Wilson

12

recorded that Larissa was able to walk on bilateral heels and toes, stand on either leg alone without difficulty, and perform a partial squat maneuver without assistance or difficulty. R. at 749. Just above those findings in the "Physical Examination" section of the report in the subsection for "Posture/Motor/Gait," Dr. Wilson recorded a statement in bold that "[g]ait is stable, within normal limits, and probably not sustainable given her history." *Id.*

The report does not indicate that Dr. Wilson reviewed any of Larissa's medical records to evaluate her history. The report does not specify that he did not review records either. As quoted above, the report states that Larissa told Dr. Wilson about her POTS diagnosis and history of dizzy spells and fatigue. Dr. Wilson may have concluded that his examination was consistent with her reported history. Without any way to exclude that possibility, Dr. Wilson's statement about Larissa's inability to sustain a normal gait was probably a medical judgment. As such, the statement meets the applicable regulatory definition of a medical opinion and the ALJ erred by failing to address it. *See, e.g.*, *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).

However, the Seventh Circuit in *McKinzey*, determined than an error—including the failure to address a medical opinion—does not require remand if we are "convinced [with great confidence] that the ALJ will reach the same result." 641 F.3d at 892 (citing *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010)).

The record was not developed by Larissa's counsel about what effect, if any, an unsustainable gait would have on her ability to perform sedentary exertional work. In *Huber*, the court explained that the neglected consultative examiner's statement that the

13

claimant had "difficulty with standing, walking, bending over and lifting" was inconsistent with the regulatory definition of light exertional work, which requires "a good deal of walking or standing." 732 F. App'x at 455 (quoting 20 C.F.R. § 404.1567(b)). The court explained that the "ALJ violated [20 C.F.R.] § 404.1527(c), because "[g]iven that the ALJ concluded that Huber could do a good deal of walking or standing ('light work'), the ALJ needed to confront the contrary opinion of the agency's own examining physician before reaching this conclusion." *Huber*, 732 F. App'x at 455 (citing *Roddy v. Astrue*, 705 F.3d 631, 636–39 (7th Cir. 2013)). Here, the examination findings, including Dr. Wilson's, showed that Larissa had the ability at times to walk without difficulty, at least for the relatively brief durations that were tested. The ALJ limited Larissa to walking for 30-45 minutes at a time and two hours total in an eight-hour workday. Larissa's counsel did not solicit testimony from the VE about how a compromised gait on certain days or the ability to walk consistently for durations shorter than 30-45 minutes would affect Larissa's ability to perform the representative occupations at the sedentary exertional level that were relied upon by the ALJ as the basis of the Step Five denial. The Seventh Circuit has held that "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making [her] strongest case for benefits." *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987); *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017).

Larissa's counsel developed the record on a related point about the effect of Larissa's reported symptoms of POTS on her ability to perform work. Larissa's counsel asked the VE:

> The next question is about standing in place. If a person -- if I altered any of the Judge's hypotheticals to also include a limitation that a person could not stand stationary in place for more than a couple minutes at a time, in other words, they either need to be sitting or if they're on their feet, walking, moving about, how would that affect the availability of these jobs, if at all?

R. at 63. The VE asked for clarification, "So . . . they can't stand in place or they can only do it for a few minutes?" *Id*. Larissa's counsel responded, "Well, let's start with a few minutes. So, let's say one to two minutes at a time, but never more than that." *Id*. The VE again asked, "One more question. Would they need to walk or can they just change positions again and resume sitting?" *Id*. Counsel responded, "They could do either." *Id*. The VE testified, "Well, the sedentary work, if they need to get up and adjust and stand for a few minutes and sit right back down, it's going to be okay there." *Id*. The hypothetical put to the VE by Larissa's counsel appears to be consistent with Larissa's testimony, as well as the medical evidence relied upon by the ALJ. For example, Dr. Gleason observed that Larissa was able to prop herself on a chair very briefly until the dizziness subsided. She also testified that she could reduce her symptoms by moving around. According to the VE's testimony, such needs would not preclude the performance of the sedentary occupational titles that he provided as being viable with the other limitations that would ultimately comprise Larissa's RFC.

15

There is doubt as to whether Dr. Wilson's statement, if accepted, would even be material to the outcome of Larissa's case. We will not remand the case to flesh out whether the statement is material when Larissa's counsel failed to develop the record on the point and chose to focus his cross-examination of the VE on limitations that appear to be more consistent with the record. Even if Dr. Wilson's statement is material, we are confident that the ALJ would give it little weight based on the record, as well as the ALJ's analysis of it. Accordingly, Larissa has not demonstrated reversable error regarding the ALJ's RFC finding.

## **Conclusion and Order**

For the reasons explained above: Larissa's objection (Dkt. 27) is OVERRULED. The Report and Recommendation (Dkt. 26) is ADOPTED. The Commissioner's decision is AFFIRMED. Final judgment shall issue by separate document. Fed. R. Civ. P. 58(a). IT IS SO ORDERED.

Date: _____8/10/2021_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov